**Carl Post, OSB # 061058**
carlpost@lawofficeofdanielsnyder.com
LAW OFFICES OF DANIEL SNYDER
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Tel: (503) 241-3617
*Local / Liaison Counsel for Plaintiff*

**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
CASEY LAW FIRM, LLC
PO Box 4577
Frisco, CO 80443-4577
Tel: (970) 372-6509
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| REESE LYLE, a consumer residing in Oregon, individually and on behalf of all others situated,<br><br>Plaintiff,<br>v.<br><br>THE PROCTER & GAMBLE COMPANY, an Ohio Corporation,<br><br>Defendants. | Case No.  3:21-cv-1760<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Unlawful Trade Practices (28 U.S.C. § 1332)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Reese Lyle ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on personal knowledge, and otherwise, upon information and belief:

### **NATURE OF THE ACTION**

1.      This is a class action lawsuit by Plaintiff, and all others similarly situated, who purchased certain over-the-counter aerosol antiperspirant sprays manufactured, sold and distributed by Defendant under the brand names "Old Spice" and "Secret" (the "Aerosol Antiperspirant Products" or "AAPs").

2.      Several of Defendant's AAPs have been independently tested and shown to contain benzene, a known human carcinogen.

3.     The presence of benzene in Defendant's AAPs was not disclosed on the products' label, violating state consumer laws, unjustly enriching Defendant, and bringing the AAPs out of compliance with applicable federal laws and regulations.

4.     Reasonable consumers, like Plaintiff, have suffered an ascertainable loss of money, measured by the difference in market value between the AAPs as they were illegally marketed (failing to disclose benzene) and the lesser market value of the AAPs had Defendant adequately disclosed the presence of benzene. As a result of Defendant's illegal conduct, the purchase price of the AAPs was greater than their objective market value (which is minimal if not worthless).

5.     Alternatively, because the sale of the AAPs was illegal (as an adulterated, misbranded, and/or unapproved new drug), Plaintiff's ascertainable loss is the entirety of the monies illegally collected from Plaintiff (i.e., the purchase price).

6.     Accordingly, Plaintiff bring this action on behalf of himself and a class comprised of all individuals similarly situated within the State of Oregon, to redress the unlawful and deceptive practices employed by Defendant in connection with its labeling, marketing and sale of the AAPs.

7.     Plaintiff seeks redress for Defendant's reckless, knowing, and/or willful violations of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq*. (herein referred to as "UTPA") and for unjust enrichment. Plaintiff seeks, *inter alia*, declaratory and injunctive relief, statutory damages under UTPA, and restitution.

8.     Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff

further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because there is diversity of citizenship between members of the proposed Class and Defendant. Defendant is either incorporated and/or have its principal place of business outside the state in which Plaintiff and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendant because Defendant is a foreign corporation authorized to do business in Oregon and registered with the Oregon Secretary of State, and has sufficient minimum contacts with Oregon or otherwise intentionally avails itself of the laws and markets of Oregon, through the promotion, sale, marketing and distribution of the AAPs in Oregon, to render the exercise of jurisdiction by Oregon courts permissible.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## THE PARTIES

12.     Plaintiff Reese Lyle is a resident and citizen of Oregon, and all relevant times resided in Multnomah County. Within the applicable statute(s) of limitations, Plaintiff purchased numerous of Defendant's Aerosol Antiperspirant Products in Oregon.

13.     Defendant THE PROCTER & GAMBLE COMPANY is an Ohio corporation with its principal place of business at 1 P&G Plaza, Cincinnati, OH 45202. As one of the world's leading brands of skin care, hair care and cosmetics, Defendant distributes its products, including the AAPs, throughout the United States including Oregon, and they are available at retail stores throughout Oregon and the United States.

14.     Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the AAPs (including those purchased by Plaintiff), and are responsible for the illegal conduct regarding the AAPs alleged herein.

## FACTUAL ALLEGATIONS

**A. Benzene, a known human carcinogen, is present in Defendant's Aerosol Antiperspirant Products.**

15.     Defendant manufactures, markets, advertises, labels, distributes, and sells a variety of AAPs, including aerosol antiperspirants sold under the brand names Old Spice and Secret.

16.     In 2021, Valisure LLC ("Valisure"), an analytical pharmacy and patient advocacy and organization, ran tests on a variety of Defendant's Aerosol Antiperspirant Products. Specifically, Valisure tested numerous lots of Defendant's Old Spice and Secret AAPs.

17.     Through its testing, Valisure discovered that all the tested AAPs sold under the name brand Secret contain benzene, with values ranging from 0.10 ppm to 2 ppm, and more than 2 ppm up to 16.2 ppm. Through its testing, Valisure also discovered that many of the tested AAPs sold under the name brand Old Spice contain benzene, with values ranging from less than .1 ppm, 0.10 ppm to 2 ppm, and more than 2 ppm up to 17.7 ppm. Dozens of other antiperspirant products tested had no detectable levels of benzene.

18.     Despite Valisure's findings, the presence (or at least potential presence) of benzene is not provided on the AAP labels, in the ingredients list (as an active *or* inactive ingredient) or otherwise. The following image shows an example:



19.     In addition, Defendant even proclaims in its advertising that benzene is one of the materials "we do not use as ingredients in any of our formulated products,"[1] which is an objectively false and/or misleading statement.

20.     The carcinogenic properties of benzene are well documented, as noted by the Centers for Disease Control and Prevention ("CDC"). *See* CDC, *Facts About Benzene* (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

21.     The Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene in the air can cause leukemia, cancer of the blood-forming organs.

22.     The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[2]

23.     Its carcinogenic properties aside, another major effect of benzene from long-term exposure is on the blood. (Long-term exposure means exposure of a year or more.) Benzene causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

24.     The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at

---

[1] P&G Website, *Ingredients*, https://us.pg.com/ingredients/ (last accessed Dec. 2, 2021).

[2] International Agency for Research on Cancer and World Health Organization, *IARC Monographs on the Ide Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health (NIOSH), Benzene* (October 30, 2019), https://www.cdc.gov/niosh/npg/npgd0049.html; *Identification of Carcinogenic Hazards to Humans*, avail. at https://monographs.iarc.who.int/list-of-classifications.

CLASS ACTION COMPLAINT – Page 6 of 40

concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[3]

25.     Due to its industrial applications, benzene is regularly found in products such as gasoline, plastics, detergents, pesticides, drugs, synthetic fibers, and cigarette smoke.

26.     Because exposure to benzene is so prevalent in industrial products, limiting or eliminating its use in products where it is not necessary (such as antiperspirant products) is even more important.

27.     The AAPs are also understood by consumers to be daily-use products, further heightening the risk.

28.     Further, because a large number of antiperspirants tested did *not* contain detectable levels of benzene, its use is not unavoidable to manufacture an effective antiperspirant.

**B.     Defendant's Aerosol Antiperspirant Products do not comply with the FFDCA and its implementing regulations, and contravene FDA industry guidance.**

29.     Plaintiff brings claims under UTPA and unjust enrichment theories and is not seeking to enforce any federal statute or regulation. However, much of the conduct giving rise to Plaintiff's claims also violated the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301, *et seq.* ("FFDCA") and its implementing regulations.

30.     The FDA regulates antiperspirants, including the Aerosol Antiperspirant Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. The FDA defines

---

[3] CDC, *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (October 30, 2019), https://www.cdc.gov/niosh/npg/npgd0049.html.

Antiperspirant as a "drug product applied topically that reduces the production of perspiration (sweat) at that site."[4]

31.     They are therefore subject to the FFDCA and its implementing regulations. These include, *inter alia*, the FFDCA's provisions regarding misbranded drugs, adulterated drugs, and OTC drugs that may be marketed without an approved drug application. 21 U.S.C. §§ 351, 352, 355h.

32.     Under the FFDCA and its implementing regulations, Defendant's Aerosol Antiperspirant Products constitute misbranded drugs, adulterated drugs, and/or unapproved new drugs that do not meet the general requirements for OTC nonprescription drugs to be marketed without an approved application.

33.     The manufacture of any misbranded or adulterated drug is prohibited under federal law. 21 U.S.C § 331(g).

34.     The introduction or delivery for introduction into interstate commerce (or receipt thereof) of any misbranded or adulterated drug is prohibited under federal law. 21 U.S.C. § 331(a), (c).

35.     Further, the  introduction or delivery for introduction into interstate commerce of a purported nonprescription OTC drug that fails to meet the OTC drug requirements is prohibited under federal law. 21 U.S.C §§ 355(a) and 331(d).

   **(i)   Defendant's Aerosol Antiperspirant Products are 'misbranded' under 21 U.S.C. § 352 and the relevant regulations.**

36.     Defendant's AAPs are 'misbranded' under 21 U.S.C. § 352.

37.     They are similarly misbranded under the applicable regulations, which state, in part, that an OTC drug "is generally recognized as safe and effective and is not misbranded if it

---

[4] 21 C.F.R. § 350.3.

meets each of the conditions contained in [21 C.F.R. §§ 330.1 – 330.15] and each of the conditions contained in any applicable monograph." 21 C.F.R. § 330.1. The regulations also incorporate the statutory language, providing that a drug is misbranded where it is not "labeled in compliance with chapter V of the Federal Food, Drug, and Cosmetic Act[.]" 21 C.F.R. § 330.1(c)(1).

38.    The 'applicable monograph', *Antiperspirant Drug Products for Over–the–Counter Human Use*, 21 C.F.R. §§ 350.1 – 350.60 deals almost exclusively with active ingredients and labeling / testing with respect to efficacy. Benzene is not an active ingredient approved by FDA in antiperspirant products, 21 C.F.R. § 350.10, and upon information and reasonable belief, does not serve that role in the AAPs.

39.    Here, the AAPs fail to comply with one or more of the following FFDCA provisions (and related regulations), rendering the AAPs 'misbranded': 21 U.S.C. § 352(a)(1), 21 U.S.C. § 352(e)(1)(A)(iii), and/or 21 U.S.C. § 352(j). These violations are pled in the alternative, as the exact source and manner in which the benzene is present is not available to the public or Plaintiff at this time.

40.    21 U.S.C. § 352(a)(1) provides that a drug shall be deemed to be misbranded under the FFDCA if, *inter alia*, if "its labeling is false or misleading in any particular."

41.    Further, "[i]f an article is alleged to be misbranded because the labeling…is misleading, then in determining whether the labeling…is misleading there shall be taken into account (among other things) not only representations made or suggested by statement [or] word,…but also the extent to which the labeling…fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article…under such conditions of use as are customary or usual." 21 U.S.C. § 321(n).

42.     The AAP labeling (in the ingredients list or otherwise) fails to reveal that the AAPs contain or may contain benzene. This absence of this disclosure conveys that it is not possible that benzene may be in the product bottle, which independent third-party testing has proved demonstrably false.

43.     The omission that AAPs contain or may contain a dangerous carcinogen is a material fact for any consumer item, and especially so for a daily product applied directly to the skin, where the presence of the carcinogen serves no benefit, therapeutic or otherwise.

44.     Indeed, on Defendant's website, Defendant notes the benzene is one "of *the most common materials we get asked about* that we do not use as ingredients[.]" P&G Website, *supra* n. 1 (emphasis added). Defendant is well aware of the 'materiality' of the presence of benzene.

45.     As described *supra*, benzene is a harmful carcinogen that is unsafe at any level. Further, as provided in FDA guidance documents, benzene in antiperspirants present "unacceptable toxicity." *See infra* ¶ 64.

46.     Exposure of potential exposure to benzene is even more material given that other products which offer antiperspirant protection are benzene-free.

47.     Accordingly, the AAPs fail to comply with 21 U.S.C. § 352(a)(1), rendering the AAPs 'misbranded.'

48.     21 U.S.C. § 352(e)(1)(A)(iii) provides that a drug is also misbranded under the FFDCA "[i]f it is a drug, unless its label bears[, *inter alia*,] the established name of each inactive ingredient listed in alphabetical order on the outside container of the retail package." The regulations incorporate the same, mandating disclosure of "[t]he ingredient information required by [21 USC § 352(e)]" of the FFDCA. 21 C.F.R. § 201.10(a). The FFDCA also requires a label

to list, *inter alia*, "the established name and quantity of…each active ingredient.t" 21 U.S.C. § 352(e)(1)(A)(ii).

49.    The regulations similarly provide, as part of the label's content requirements, that the label discloses the "'inactive ingredients' followed by a listing of the established name of each inactive ingredient." 21 C.F.R. § 201.66(c)(8).

50.    Part 201 (which governs labeling) defines "active ingredient" as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of humans." 21 C.F.R. § 201.66(b)(2). "Inactive ingredient means any component other than an active ingredient." 21 C.F.R. § 201.66(b)(8).

51.    While 'component' as it is used in Part 201 is not defined, Part 201 specifies that with respect to a finished product's label ingredient list, "[t]he term ingredient applies to *any substance in the drug*[.]" 21 C.F.R. § 201.10(b) (emphasis added). Thus, OTC drugs as they are delivered to consumers may only contain 'active ingredients' or 'inactive ingredients.'

52.    Benzene is a substance found in Defendant's AAPs by independent, third-party testing.

53.    Upon information and reasonable belief, benzene is not an 'active ingredient' in Defendant's AAPs as it does not nor could be intended to reduce the production of perspiration at the site where it is applied. Nor is benzene on the FDA's list of approved active ingredients for antiperspirant products.

54.    Benzene is therefore an inactive ingredient, yet Defendant unlawfully omitted it as such on the Aerosol Antiperspirant Product labels. Defendant should have included benzene in the 'inactive ingredients' panel.

55.     Further, it does not matter if benzene were present in some, but not all, of the bottles in the particular product line. A substance that is present in some, but not all, bottles of a drug product should still be listed as an 'inactive ingredient.'

56.     In its OTC Labeling Guidance, when discussing 21 C.F.R. § 201.66(c)(8)'s 'inactive ingredient' requirement, FDA advises that when an inactive ingredient is present in some but not all product bottles, the manufacturer may either provide different labels or place a "may contain this ingredient" asterisk next to inactive ingredients that may or may not be present.[5]

57.     Indeed, in the exemplar bottle pictured *supra*, ¶ 18, the 'inactive ingredients' panel lists "butane" and "isobutane" with asterisks denoting that the product "may contain this ingredient."

58.     Thus, had Defendant followed FDA's guidance, and its own practice with respect to other inactive ingredients, it would have at least included benzene in the inactive ingredients list with a 'may contain this ingredient' asterisk. Since (upon information and belief), Defendant chose to use uniform ingredient labeling for each product line, it was required to make this disclosure, which it failed to do.

59.     Accordingly, the AAPs fail to comply with 21 U.S.C. § 352(e)(1)(A)(iii), rendering the AAPs 'misbranded.'

60.     Additionally (or alternatively if benzene were not required to be listed as an inactive ingredient), 21 U.S.C. § 352(j) provides that a drug is also misbranded under the FFDCA if "it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."

---

[5] FDA, *Guidance for Industry: Labeling OTC Human Drug Products* (May 2009) at 9, 12-13, avail. at https://www.fda.gov/media/76481/download.

61.    Antiperspirant products such as Defendant's Aerosol Antiperspirant Products are marketed and understood by consumers to be 'daily-use' products.

62.    Consumers understand antiperspirant products to be daily (if not more than once-daily) products.

63.    Given the frequency of that the AAPs are to be applied, and given that carcinogen and benzene-free antiperspirants exist offering the same therapeutic benefit, utilizing an antiperspirant containing benzene creates a completely avoidable and unreasonable risk, and is dangerous to one's health.

64.    This is consistent with FDA's approach to the use of benzene in drug manufacturing (including benzene). Recognizing benzene's industrial use as a solvent, FDA has advised drug manufacturers to avoid using benzene, which it classifies as a "known human carcinogen" and "Class 1 solvent…to be avoided[.]" In its non-binding guidance as to residual solvents (solvents than remain as impurities in finished drug products), FDA explains:

### IV.    LIMITS OF RESIDUAL SOLVENTS

#### A.    Solvents to Be Avoided

Solvents in Class 1 (Table 1; see companion document) should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted as shown in Table 1, unless otherwise justified.

FDA, *Guidance for Industry: Q3C Impurities: Residual Solvents* (Dec. 1997), avail. at https://www.fda.gov/media/71736/download, at 6 (emphasis in original).

65.    Insofar as the benzene in Defendant's AAPs was intentionally utilized or was a residual solvent impurity, since its use was not unavoidable in order to produce an antiperspirant

with a significant therapeutic advance, its presence at any level presents an unacceptable toxicity, i.e., dangerous to health.

66.     Accordingly, the AAPs fail to comply with 21 U.S.C. § 352(j), rendering the AAPs 'misbranded.'

**(ii)  Defendant's Aerosol Antiperspirant Products are 'adulterated' under 21 U.S.C. § 352 and the relevant regulations.**

67.     In addition to (or in the alternative) to being 'misbranded' under 21 U.S.C. § 352, Defendant's AAPs are 'adulterated' under 21 U.S.C. § 351 and related regulations.

68.     Here, the AAPs fail to comply with one or more of the following FFDCA provisions (and related regulations), rendering the AAPs 'adulterated': 21 U.S.C. § 351(a)(1), 21 U.S.C. §§ 351(a)(2)(A) (or § 351(a)(3)), 21 U.S.C. § 351(a)(3), and/or 21 U.S.C. § 351(a)(2)(B). These violations are pled in the alternative, as the exact source and manner in which the benzene is present is not available to the public or Plaintiff at this time.

69.     21 U.S.C. § 351(a)(1) provides that a drug shall deemed to be adulterated under the FFDCA if, *inter alia*, "it consists in whole or in part of any filthy, putrid, or decomposed substance[.]"

70.     Defendant's AAPs consist in part of benzene, an inherently volatile and unstable compound subject to rapid decomposition. Accordingly, regardless of the source of benzene in the AAPs, its presence renders the AAPs as consisting in part of a filthy, putrid, or decomposed substance.

71.     Further, insofar as the benzene exists in the AAPs as an impurity or contaminant, regardless of whether benzene is inherently 'filthy, putrid, and/or decomposed,' it is rendered a 'filthy, putrid, and/or decomposed' substance by virtue of its nature as an impurity and/or contaminant.

72.    Accordingly, the AAPs fail to comply with 21 U.S.C. § 351(a)(1), rendering the AAPs 'adulterated.'

73.    21 U.S.C. § 351(a)(2)(A) provides that a drug is also adulterated under the FFDCA "if it has been prepared, packed, or held under insanitary conditions…whereby it may have been rendered injurious to health[.]" Similarly, 21 U.S.C. § 351(a)(3) provides that a drug is also adulterated "if its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health[.]"

74.    If it is the case that the benzene in the AAPs was not added intentionally to the antiperspirant formulation, it follows that the benzene most likely exists due to either failures to adequately remove benzene impurities, or from contamination during the preparation, packaging, or holding of the AAPs.

75.    If benzene is present because it is an impurity (left over after its use as a solvent during the manufacturing process), the mere decision to utilize benzene—as opposed to other equally effective, less harmful (and non-carcinogenic) chemicals—amounts to preparing the AAPs in a way whereby it *may* be rendered injurious to health.

76.    As noted *supra* (¶ 64), this is essentially the position taken by FDA in its guidance documents: that benzene 'should not be employed in the manufacture of' the AAPs 'because of [the chemical's] unacceptable toxicity.'

77.    In the alternative, even if the decision of Defendant or one of its agents to utilize benzene as a solvent does not amount to preparing the AAPs in a way potentially rendering in injurious to health, the failure to utilize adequate procedures to remove impurities during the manufacturing process amounts to precisely that.

78.     Alternatively (or in addition to), if benzene is the result of contamination—its presence is an accident—this evidences that the AAPs were either manufactured, packaged, or stored under conditions where it, at the very least, *may have been* rendered injurious to health (or utilized containers or cannisters similarly creating that risk). This renders the AAPs adulterated, regardless of whether those conditions resulted in benzene contamination in every single product bottle.

79.     Accordingly, the AAPs fail to comply with 21 U.S.C. § 351(a)(2)(A) (and/or § 351(a)(3)), rendering the AAPs 'adulterated.'

80.     21 U.S.C. § 351(a)(2)(B) provides that a drug is also adulterated under the FFDCA if "the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug…has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess[.]"

81.     The general regulations governing OTC drugs clarify that OTC drugs must be "manufactured in compliance with current good manufacturing practices, as established by [21 C.F.R.] parts 210 and 211." 21 C.F.R. § 330.1(a); *see also* 21 C.F.R. § 330.1(f) ("[t]he product container and container components meet the requirements of [21 C.F.R.] § 211.94"). "The failure to comply with any regulation set forth in [Parts 210 and 211] in the manufacture, processing, packing, or holding of a drug shall render such drug to be adulterated under [21 U.S.C. § 351(a)(2)(B)]." 21 C.F.R. § 210.1(b).

82.    Insofar as benzene—a harmful carcinogen—made its way into the AAPs by accident, it follows that it was due to an aberration from the desired manufacturing process by either Defendant or its agents.

83.    Accordingly, the AAPs fail to comply with 21 U.S.C. § 351(a)(2)(B), rendering the AAPs 'adulterated.'

### (iii) Defendant's Aerosol Antiperspirant Products do not meet the general requirements for nonprescription drugs to be marketed without an approved application.

84.    In addition to (or in the alternative) to being 'misbranded' and/or 'adulterated' under 21 U.S.C. §§ 351-352, Defendant's Aerosol Antiperspirant Products are unapproved new drugs marketed in violation of 21 U.S.C. §§ 331 and 355.

85.    21 U.S.C. § 355h sets forth the requirements for marketing nonprescription OTC drugs without an approved new drug application, and OTC drugs failing to meet those requirements are rendered unapproved new drugs marketed in violation of 21 U.S.C §§ 355(a) and 331(d).

86.    In other words, for manufacturers to avail themselves of the privilege of bringing new OTC drugs to market *without* applying for FDA approval, certain conditions must be met. If a manufacturer is unable to meet those conditions, then it must follow the FDA's more burdensome procedure of submitting an application for FDA approval. If a manufacturer who does not meet the conditions nevertheless brings its drug to market, it is rendered an illegal unapproved new drug.

87.    Among those requirements are that the OTC drug is "in conformity with the requirements for nonprescription use of [any applicable] final monograph [and] the general requirements for nonprescription drugs" provided at 21 C.F.R. § 330.1. 21 C.F.R. § 355h(a)(1)(A)(i).

88.     As explained above, one or more of the portions of 21 C.F.R. § 330.1 dealing with misbranding and adulteration were violated by Defendant. *See supra* ¶¶ 36-83 (discussing 21 C.F.R. §§ 330.1(a), (c)(1), (f)).

89.     Further, 21 C.F.R. § 330.1 provides another requirement for OTC drugs implicated here, that "[t]he product contains only suitable inactive ingredients which are safe in the amounts administered[.]" 21 C.F.R. § 330.1(e). A suitable inactive ingredient generally provides a benefit in terms of the drug formulation (such as a delayed-release mechanism in a prescription drug).

90.     As discussed herein, the benzene was a substance in the drug and not an active ingredient, and is therefore an inactive ingredient in the AAPs, mandating its inclusion on the ingredients panel (with a 'may contain this ingredient' qualifier at best).

91.     Benzene is not a 'suitable' inactive ingredient. Upon information and belief, the benzene serves no beneficial purpose in the drug.

92.     Nor is benzene a 'safe' inactive ingredient given its carcinogenic properties and its status as a Class I solvent that should not be used where, as here, a non-carcinogenic substitute was available.

93.     Therefore, Defendant's AAPs are unapproved new drugs marketed in violation of 21 U.S.C §§ 355(a) and 331(d).

**C.   Plaintiff's Purchase of Defendant's Aerosol Antiperspirant Products**

94.     On numerous occasions over the last several years, Plaintiff purchased Defendant's AAPs from various retailers in Oregon including Multnomah County.

95.     Plaintiff's most recent purchase was Defendant's Old Spice Pure Sport Aerosol Antiperspirant, and occurred in early-mid 2021 from a retailer in Portland, Oregon.

96.     As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact in the form of an ascertainable loss of money as a result of Defendant's actions as set forth herein.

97.     At the time of his purchases, there was no disclosure in Defendant's marketing and/or on the AAP labels (in the ingredients list or otherwise) that the AAPs contained benzene (or, at the very least, that the AAPs 'may contain' benzene), though this was in fact the case.

98.     Like other Class Members, what Plaintiff received is inherently worth less than the AAPs as they were presented to Plaintiff. An antiperspirant product containing benzene, or one that may contain benzene, is inherently worth less than an antiperspirant product that does not contain benzene. Reasonable consumers including Plaintiff would not expose themselves to benzene, especially with respect to a once-daily antiperspirant product applied directly to the skin where therapeutically equivalent products that do not contain benzene are readily available.

99.     Like other Class Members, Plaintiff, in the exercise of reasonable care, could not reasonably have discovered Defendant's unlawful conduct in violation of UTPA until November 2021 *at the earliest*, when Valisure released the results of its testing.

100.    Plaintiff wants to purchase the AAPs in the future, but only if the Defendant remedies its unlawful conduct and provides AAPs that do not contain benzene and commits to lawfully disclosing the presence or potential presence of benzene when applicable.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff brings this class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> **All persons in the State of Oregon who purchased Aerosol Antiperspirant Product for personal use and not for resale.**

102.    Specifically excluded from the proposed Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Further excluded is Defendant, its officers, directors, agents, trustees, parents, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

103.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

<u>Federal Rules of Civil Procedure, Rule 23(a) Factors</u>

104.    **Numerosity**. Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are at least thousands of persons in the Class.

105.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

106.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendant's Aerosol Antiperspirant Products complained of herein, and—as a result of Defendant's illegal conduct—have suffered

an ascertainable loss of money. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

      107.   **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), which control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

a) Whether Defendant's AAPs contained benzene;

b) Whether the source of benzene in the AAPs was by design, was an impurity, or the result of contamination;

c) Whether Defendant omitted, in connection with the sale of the AAPs, whether they contained or may have contained benzene;

d) Whether the Product as represented by the Defendant (without benzene) is inherently worth more than the Product actually received by Class Members;

e) Whether Defendant violated Or. Rev. Stat. §§ 646.608(1)(b), 646.608(1)(e), and/or 646.608(1)(g);

f) Whether Defendant's violations of UTPA were willful, reckless, and/or knowing;

g) Whether Plaintiff and the Class are entitled to statutory damages of $200 under UTPA;

h) Whether Defendant was unjustly enriched as a result of the conduct complained of herein;

i) Whether the AAPs were adulterated, misbranded, and/or unapproved new drugs in violation of the FFDCA;

j)  Whether Plaintiff and the Class are entitled to attorneys' fees and costs, and in what amount;

k)  Whether an injunction is necessary to prevent Defendant from engaging in the illegal conduct complained of herein and/or provide corrective advertising; and

l)  Whether Plaintiff and the Class are entitled to declaratory and/or other equitable relief.

<u>Federal Rules of Civil Procedure, Rule 23(b)(3) Factors</u>

108.  **Common Issues Predominate**: As set forth in detail hereinabove, common issues of fact and law predominate because Plaintiff's claims are based on Defendant's common course of conduct. Whether Defendant's conduct violates Oregon's Unlawful Trade Practices Act, <u>Or. Rev. Stat.</u> §§ 646.605, *et seq.* is common to all members of the Class and are the predominating issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

109.  **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a)  Given the size of the claims of individual Class Members, as well as the resources of Defendant, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b)  This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort, and expense ad will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

110.     **Notice to the Class:** Notice can be accomplished by publication for most Class Members.

111.     The Class Members have suffered economic harm and suffered injury in fact as a result of Defendant's misconduct, in that each member purchased the Product whose value was diminished due to Defendant's unlawful conduct.

<u>Federal Rules of Civil Procedure, Rule 23(b)(2) Factors</u>

112.      In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

113.     Plaintiff seeks injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as marketing and selling Aerosol Antiperspirant Products that may be adulterated with benzene and/or corrective advertising.

## CLAIMS FOR RELIEF

114.    Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
### Or. Rev. Stat. §§ 646.605, *et seq.*
### Subsection 646.608(1)(b): causing likelihood of confusion or misunderstanding

115.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    Plaintiff brings this claim under UTPA, Or. Rev. Stat. §§ 646.605, *et seq.*, on behalf of himself and the Class, who were subject to Defendant's above-described illegal conduct.

117.    Plaintiff and Defendant are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

118.    Defendant is engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

119.    Defendant is engaged in "trade" or "commerce" within the meaning of O.R.S. § 646.605(8), affecting consumers in Oregon and throughout the United States.

120.    Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the AAPs.

121.    UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendant willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under the UTPA.

122.    Defendant violated O.R.S. § 646.608(1)(b) by causing the likelihood of confusion or of misunderstanding as to the source of goods. Defendant failed to adequately disclose on the label that the AAPs contain or may contain benzene, though this was in fact the case.

123.    Absent a label disclosure that the AAPs contained or may contain benzene, a reasonable consumer (including Plaintiff) would not expect or understand that the AAP would contain or may contain benzene.

124.    Defendant's violations of O.R.S. § 646.608(1)(b) were willful as Defendant knew or should have known that the conduct complained of herein caused the likelihood of confusion or of misunderstanding as to the source of the AAPs, and violated Oregon's Unlawful Trade Practices Act.

125.    Defendant caused the likelihood of confusion complained of herein with the knowledge that its conduct violated UTPA at the time the AAP labels were created through the present.

126.    Further, Defendant recklessly and/or knowingly engaged in conduct which caused the likelihood of confusion or of misunderstanding as to the source of the AAPs.

127.    Defendant willfully and knowingly (and/or recklessly) omitted benzene from the AAP label, in a way that violated UTPA and the FFDCA, even though it is axiomatic that this would at least cause the likelihood to confuse the public as to the presence or potential presence of benzene in the AAP.

128.    Defendant intended to cause this confusion, as evidenced by statements on its website that acknowledge customers are concerned about benzene and that their products (including the AAPs) are benzene-free. Defendant was well aware that it could charge more for products, including the AAPs, that the market understood to be free from benzene.

129.    Upon information and belief, Defendant is an entity with extensive experience in the manufacturing and distribution of antiperspirant drug products, and would be aware or should have been aware as to the presence of benzene in the AAPs.

130.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every AAP container manufactured, labeled, and sold by Defendant to Plaintiff and the Class, which caused likelihood of confusion or of misunderstanding as to the source of the Product.

131.    Upon reasonable belief, Defendant continued to manufacture, market, and/or sell the AAPs without disclosing the presence or potential presence of benzene, even after Valisure's publication of its testing results.

132.    As a result of Defendant's willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

133.    Plaintiff and the Class lost money due to the difference between the value of the Product as presented by the Defendant in a way that is likely to cause confusion or of misunderstanding as to the AAP source, as inherently reflected in the purchase price, and the lesser value of the AAPs actually received by the Plaintiff and the Class. Absent the Defendant's willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), Plaintiff and the Class would not have suffered this ascertainable loss of money.

134.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of himself and the Class) seeks statutory damages in the amount of $200.

135.    Plaintiff and the Class further seek an order declaring Defendant has violated UTPA.

136.     Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
### Or. Rev. Stat. §§ 646.605, *et seq*.
### Subsections 646.608(1)(e) and (1)(g): unlawful omissions

137.     Plaintiff here incorporates by reference all preceding as though fully set forth herein.

138.     Plaintiff brings this claim under UTPA, Or. Rev. Stat. §§ 646.605, *et seq*., on behalf of himself and the Class, who were subject to Defendant's above-described illegal conduct.

139.     Plaintiff and Defendant are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

140.     Defendant is engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

141.     Defendant is engaged in "trade" or "commerce" within the meaning of O.R.S. § 646.605(8), affecting consumers in Oregon and throughout the United States.

142.     Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the AAPs.

143.     UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendant willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under the UTPA.

144.     Defendant violated O.R.S. § 646.608(1)(e) by representing that goods have characteristics, ingredients, quantities or qualities that the goods do not have. Similarly,

Defendant violated O.R.S. § 646.608(1)(g) by representing that goods are of a particular standard, quality or grade when they are of another.

145.    A "representation under [O.R.S. §§ 646.608(1)(e) and 646.608(1)(g)] may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." O.R.S. § 646.608(2).

146.    Here, Defendant violated O.R.S. § 646.608(1)(e) by failing to adequately disclose on the label that the AAPs contain or may contain benzene and/or a carcinogen, though this was in fact the case.

147.    Absent a label disclosure that the AAPs contained or may contain benzene and/or a carcinogen, a reasonable consumer would not expect or understand that the AAP would contain or may contain benzene as an ingredient and/or any quantity of a carcinogen.

148.    Similarly, Defendant violated O.R.S. § 646.608(1)(g) by failing to adequately disclose on the label that the AAPs contain or may contain benzene and/or a carcinogen, though this was in fact the case.

149.    Absent a label disclosure that the AAPs contained or may contain benzene and/or a carcinogen, a reasonable consumer (including Plaintiff) would not expect or understand the AAPs as being of a lower benzene- or carcinogen-containing quality or grade compared to other comparably priced antiperspirant products that do not contain benzene or other carcinogens.

150.    Defendant's violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g) were willful as Defendant knew or should have known that the failure to adequately disclose such on the label constituted an unlawful omission regarding the ingredients, quantities, quality, and/or grade of the AAPs, and violated Oregon's Unlawful Trade Practices Act.

151.    Defendant's benzene / carcinogen omission, which regarded the ingredients, quantities, quality, and/or grade of the AAPs, was made with the knowledge that its conduct violated UTPA at the time the AAP labels were created through the present.

152.    Further, Defendant recklessly and/or knowingly engaged in this omission regarding the ingredients, quantities, quality, and/or grade of the AAPs.

153.    Defendant willfully and knowingly (and/or recklessly) omitted benzene from the AAP label, in a way that violated §§ 646.608(1)(e) and 646.608(1)(g) of UTPA and the FFDCA, with the knowledge and intent that reasonable consumers would be deceived.

154.    Defendant intended to omit this information omission regarding the ingredients, quantities, quality, and/or grade of the AAPs, as evidenced by statements on its website that acknowledge customers are concerned about benzene and that their products (including the AAPs) are benzene-free. Defendant was well aware that it could charge more for products, including the AAPs, that the market understood to be free from benzene and/or carcinogens.

155.    Upon information and belief, Defendant is an entity with extensive experience in the manufacturing and distribution of antiperspirant drug products, and would be aware or should have been aware as to the presence of benzene in the AAPs.

156.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every AAP container manufactured, labeled, and sold by Defendant to Plaintiff and the Class, which included the omission regarding the ingredients, quantities, quality, and/or grade of the AAPs.

157.    Upon reasonable belief, Defendant continued to manufacture, market, and/or sell the AAPs without disclosing the presence or potential presence of benzene, even after Valisure's publication of its testing results.

158.    As a result of Defendant's willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

159.    Plaintiff and the Class lost money due to the difference between the value of the Product as presented by the Defendant (with the omission regarding the ingredients, quantities, quality, and/or grade of the AAPs), as inherently reflected in the purchase price, and the lesser value of the AAPs actually received by the Plaintiff and the Class. Absent the Defendant's willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g), Plaintiff and the Class would not have suffered this ascertainable loss of money.

160.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of himself and the Class) seeks statutory damages in the amount of $200.

161.    Plaintiff and the Class further seek an order declaring Defendant has violated UTPA.

162.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

## **THIRD CAUSE OF ACTION**

### **VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605, *et seq.***
**Subsections 646.608(1)(e) and (1)(g): failure to disclose lawfully required information**

163.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

164.    Plaintiff brings this claim under UTPA, Or. Rev. Stat. §§ 646.605, *et seq*., on behalf of himself and the Class, who were subject to Defendant's above-described illegal conduct.

165.    Plaintiff and Defendant are "persons" within the meaning of <u>Or. Rev. Stat.</u> § 646.605(4).

166.    Defendant is engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

167.    Defendant is engaged in "trade" or "commerce" within the meaning of O.R.S. § 646.605(8), affecting consumers in Oregon and throughout the United States.

168.    Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the AAPs.

169.    UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendant willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under the UTPA.

170.    Defendant violated O.R.S. §§ 646.608(1)(e) and 646.608(1)(g)—which deal specifically with representations or omissions—by failing to disclose lawfully required information and/or failing to disclose information in the particular way the law requires.

171.    The legally required yet omitted information—as described below—relates to the characteristics, ingredients, quantities or qualities of the good (§ 646.608(1)(e)); and/or the particular standard, quality, or grade of a the good (646.608(1)(g)).

172.    Here, as provided *supra*, Defendant was legally required to disclose—and yet failed to disclose— benzene as an ingredient on the label, in violation of the FFDCA, 21 U.S.C. § 352(e)(1)(A)(iii) (or, alternatively, 21 U.S.C. § 352(e)(1)(a)(ii)).

173.    Defendant thus failed to disclose legally required information which related directly to the characteristics, ingredients, quantities or qualities of the Product; and/or the particular standard, quality, or grade of the Product.

174.    Without the legally required disclosure, a reasonable consumer (including Plaintiff) would not expect or understand the AAPs as having benzene as an ingredient, or being of a lower benzene-containing quality or grade compared to other comparably priced antiperspirant products that do not contain benzene or other carcinogens.

175.    Defendant's violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g) were willful as Defendant knew or should have known that it was omitting FFDCA required information relating to the ingredients, quantities, quality, and/or grade of the AAPs, in violation Oregon's Unlawful Trade Practices Act.

176.    Defendant engaged in this failure to disclose legally required information with the knowledge that its conduct violated UTPA at the time the AAP labels were created through the present.

177.    Further, Defendant recklessly and/or knowingly omitted the legally required information (described above) relating to the ingredients, quantities, quality, and/or grade of the AAPs, with the knowledge and intent that reasonable consumers would be deceived. Defendant was well aware that it could charge more the AAPs if it omitted legally required information from the label, as evidenced by statements on its website that acknowledge customers are concerned about benzene and that their products (including the AAPs) are benzene-free.

178.    Upon information and belief, Defendant is an entity with extensive experience in the manufacturing and distribution of antiperspirant drug products, and would be aware or should have been aware as to the presence of benzene in the AAPs as well as the FFDCA requirements as to listing ingredients on the label.

179.    The failure to disclose this legally required information was no isolated incident or one-time mistake; rather, it occurred over years with respect to every AAP container manufactured, labeled, and sold by Defendant to Plaintiff and the Class.

180.    Upon reasonable belief, Defendant continued to manufacture, market, and/or sell the AAPs without disclosing the presence or potential presence of benzene on the ingredients label to comply with the FFDCA, even after Valisure's publication of its testing results.

181.    As a result of Defendant's willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

182.    Since the AAPs failed to include legally required information, their sale was illegal under the FFDCA. Defendant therefore illegally sold the AAPs to Plaintiff and the Class, thereby causing Plaintiff and the Class Members' ascertainable loss of money, as reflected by the entire purchase price.

183.    Alternatively, an AAP that contains or may contain benzene—which is what was required to be included on the ingredients panel of the label under the FFDCA—is inherently worth less than an AAP that does not contain or may contain benzene, which is how the AAP was illegally provided to Plaintiff and the Class

184.    Absent the Defendant's willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g), Plaintiff and the Class would not have suffered this ascertainable loss of money.

185.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of himself and the Class) seeks statutory damages in the amount of $200.

186.    Plaintiff and the Class further seek an order declaring Defendant has violated UTPA.

187.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
### Or. Rev. Stat. §§ 646.605, *et seq.*
### Subsection 646.608(1)(i): false advertising

188.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

189.    Plaintiff brings this claim under UTPA, Or. Rev. Stat. §§ 646.605, *et seq.*, on behalf of himself and the Class, who were subject to Defendant's above-described illegal conduct.

190.    Plaintiff and Defendant are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

191.    Defendant is engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

192.    Defendant is engaged in "trade" or "commerce" within the meaning of O.R.S. § 646.605(8), affecting consumers in Oregon and throughout the United States.

193.    Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the AAPs.

194.    UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendant willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under the UTPA.

195.    Defendant violated O.R.S. § 646.608(1)(i) by advertising goods with intent not to provide them as advertised. On its website, Defendant advertises its products, including the AAPs, in part by stating the following:

**Ingredients we do not use**

Here is a list of some of the most common materials we get asked about that we do not use as ingredients in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care):…benzene

Defendant website, *supra* fn. 1 (emphasis in original).

196.    Defendant also proclaims that "[e]very ingredient has a role in delivering the performance you expect from our products. We seek to use the best ingredients for our products so that you can use them with confidence." *Id.*

197.    These advertisements are false: benzene *is* an ingredient in the AAPs, it is not necessary to achieve any performance of the AAPs (therapeutic or otherwise), and it is certainly not a 'best ingredient' since it is a carcinogen whose presence is not necessary to achieve any therapeutic effect.

198.    Upon information and belief, at the time these statements were made (including up until the present), Defendant intended not to provide AAPs that were consistent with these statements.

199.    Reasonable consumers (including Plaintiff) understand these advertising statements to mean that the AAPs do not contain benzene and do not unnecessarily contain carcinogens.

200.    Defendant's violations of O.R.S. § 646.608(1)(i) were willful as Defendant knew or should have known that these statements constituted an advertisement that did not conform to

the true nature of the AAPs, and violated Oregon's Unlawful Trade Practices Act. Defendant never intended to provide AAPs that conformed to these advertising statements.

201.    Defendant engaged in this false advertising with the knowledge that its conduct violated UTPA at the time the advertising statements were made.

202.    Further, Defendant recklessly and/or knowingly engaged in in the false advertising conduct. Defendant was well aware that it could charge more for AAPs advertised as 'benzene' free than those not advertised as such. This is evidenced by the disclosure on Defendant's website that benzene is one "of the most common materials we get asked about[.]"

203.    The false nature of these advertising statements was willful, and reckless and/or knowing. Upon information and belief, Defendant is an entity with extensive experience in the manufacturing and distribution of antiperspirant drug products, and would be aware or should have been aware that the AAPs contained or may contain benzene.

204.    These false advertisements were no isolated incident or one-time mistake. These statements on Defendant's website existed *at* least as early as July 2019.[6]

205.    Further, upon information and belief, these particular statements reflect a broader advertising campaign by Defendant with respect to the superiority of its ingredients, including but not limited to the avoidance of unnecessary harmful ingredients.

206.    As a result of Defendant's willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

207.    Plaintiff and the Class lost money due to the difference between the value of the AAPs as illegally advertised by the Defendant, as inherently reflected in the purchase price, and

---

[6]    Wayback Machine Internet Archive of Defendant website, avail. at https://web.archive.org/web/20190731195303/https://us.pg.com/ingredients/ (last accessed Dec. 2, 2021).

the lesser value of the AAPs actually received by the Plaintiff and the Class. Absent the Defendant's willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), Plaintiff and the Class would not have suffered this ascertainable loss of money.

208.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of himself and the Class) seeks statutory damages in the amount of $200.

209.    Plaintiff and the Class further seek an order declaring Defendant has violated UTPA.

210.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

211.    Plaintiff hereby incorporates by reference all preceding as though fully set forth herein.

212.    Plaintiff and the Class have conferred a benefit on Defendant: namely, monies for the purchase of the AAPs.

213.    The Defendant is aware that it has received this benefit from consumers comprising the Class (including Plaintiff).

214.    Under the circumstances, it would be unjust to allow retention of these monies without requiring disgorgement of Defendant's AAP profits and restitution to Plaintiff and the Class.

215.    The Defendant received the monies from Plaintiff and the Class under circumstances that were wrongful or inequitable.

CLASS ACTION COMPLAINT – Page 37 of 40

216.    First, Defendant engaged in deceptive conduct in both the labeling and advertising of the AAPs. Had Defendant adequately disclosed the presence of benzene, no reasonable consumer (including Plaintiff) would have purchased the AAPs. This is especially true where, as here, comparatively priced products with the same therapeutic benefit were available that did *not* contain (or 'may contain') benzene.

217.    Second (also pled in the alternative), Defendant sold a product with unsuitable and unsafe inactive ingredients, such that it was an illegal product under the FFDCA product regardless of whether adequate disclosures had been made. In so doing, Defendant acted with conscious disregard for the health and safety of Plaintiff and members of the Class

218.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

219.    There is no enforceable contract between Plaintiff (and Members of the Class) and Defendant with respect to the AAPs.

220.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

221.    Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist; alternatively, Plaintiff seeks unjust enrichment in the alternative.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel as counsel for the Class;

B.    To pay actual and/or statutory damages of $200 to Plaintiff and all members of the Class;

C.    Disgorge of any ill-gotten benefits that Defendant received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice

D.    Injunctive relief;

E.    Pre-judgment interest from the date of filing this suit;

F.    Declaring that Defendant has committed the violations alleged herein.

G.    Reasonable attorneys' fees;

H.    Costs of this suit; and

I.    Such other and further relief as the Court may deem necessary or appropriate.

## **JURY DEMAND AND NOTICE TO ATTORNEY GENERAL**

Plaintiff and the Class, by and through undersigned counsel, hereby request a trial by jury as to all issues so triable. Further, upon filing this action, this Complaint shall be mailed to the Attorney General of the State of Oregon, and proof of receipt of same shall be filed with this Court.

December 7, 2021                    Respectfully submitted,

                                   **LAW OFFICES OF DANIEL SNYDER**


                          By:  */s/ Carl Post*
                              Carl Post (OSB # 061058)
                              carlpost@lawofficeofdanielsnyder.com
                              1000 S.W. Broadway, Suite 2400
                              Portland, Oregon 97205
                              Tel: (503) 241-3617
                              Fax: (503) 241-2249

                              *and*

                              **CASEY LAW FIRM, LLC**
                              M. Ryan Casey (OSB # 152824)
                              ryan@rcaseylaw.com
                              PO Box 4577
                              Frisco, CO 80443
                              Tel: (970) 372-6509
                              Fax: (970) 372-6482

                              *Counsel for Plaintiff*